Laughlin, Dowling, Merrell and Greenbaum, JJ., concur.

Respondent disbarred. Settle order on notice.

---

Edwin D. DeWitt, Appellant, Respondent, *v.* New York Herald Company, Respondent, Appellant.

First Department, April 29, 1921.

Pleadings — acceptance in answer of due performance of contract which is subject of action — defense cannot be predicated on breach without denial of allegations of performance — realleging, by reference, allegations and admissions in other paragraphs of answer not a realleging of denials therein — failure to deny contract as alleged as affecting allegations in defense inconsistent therewith — when counterclaim and defense may be combined — counterclaim not stating facts is demurrable.

Where, in an action by an advertising director against a newspaper for commissions and for damages for a wrongful discharge, the plaintiff alleges due performance of the contract, and the defendant in its answer accepts the contract as alleged, there can be no defense predicated on a breach of the contract without a denial of the allegations of performance. Nor is such denial accomplished by realleging in a separate defense, by reference, the *allegations* and *admissions* contained in other paragraphs

of the answer, without the *denials* contained in said paragraphs, and a demurrer to the separate defense is properly sustained.

It is a well-settled rule that unless a contract as alleged is denied, allegations in a defense inconsistent therewith are of no avail, since that is not a form of denial authorized by the Code of Civil Procedure.

*It seems*, that there is no objection to combining a defense and a counterclaim where it is claimed that the same facts constitute both; but a counterclaim must be a cause of action in favor of the defendant and the facts showing the cause of action must be stated therein and, if the facts so stated are insufficient to constitute a cause of action, a demurrer to the counterclaim must be sustained.

Hence, in this action a demurrer to a counterclaim is improperly overruled, where the facts constituting the counterclaim are not alleged, but the defendant merely alleges breaches of an *alleged* contract, the validity of which it attacks, and on which plaintiff relies.

APPEAL by the plaintiff, Edwin D. DeWitt, from so much of an interlocutory judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 16th day of December, 1920, as overrules plaintiff's demurrer to the counterclaim contained in defendant's amended answer and directs final judgment for defendant for the relief demanded in said counterclaim in the event of default by the plaintiff in the service of a reply thereto within ten days after the expiration of defendant's time to serve a second amended answer.

Appeal by the defendant, New York Herald Company, from so much of said judgment as sustains the plaintiff's demurrer to the third separate defense contained in defendant's answer.

*Allen S. Wrenn* of counsel [*Gregory, Stewart & Wrenn,* attorneys], for the plaintiff.

*Theodore Kiendl, Jr.,* of counsel [*William C. Cannon* with him on the brief; *Stetson, Jennings & Russell,* attorneys], for the defendant.

LAUGHLIN, J.:

The complaint contains two counts. The first is for $65,362, a balance of commissions alleged to have been earned and to be due and owing from the defendant to the plaintiff

under a contract in writing, a copy of which is annexed to and made a part of the complaint, bearing date the 3d day of October, 1918, by which, it is alleged, the defendant employed plaintiff as advertising director for the New York *Herald* and *Evening Telegram*, owned and published by it, for the period of three years from the 22d day of October, 1918, the contract to continue thereafter until service by one of the parties of a ninety days' notice of a wish to discontinue the same. Plaintiff alleges that he entered upon the performance of his duties under the contract and continued in the performance thereof and duly performed all the terms and conditions to be performed on his part thereunder until on or about the 17th day of January, 1920, when the defendant wrongfully discharged him and prevented and has since continued to prevent him from further performing the agreement. Facts are alleged tending to show the amount the defendant received from the advertisements during the period down to the time of the discharge of the plaintiff and the amount of commissions to which he was entitled thereon under the contract and that there was a balance owing as alleged. The second count is for $500,000 damages for the wrongful discharge; and in that count the complaint realleges due performance of the contract by the plaintiff, his wrongful discharge on the 17th day of January, 1920, and that he then was and ever since that date has been ready, willing and able to perform and has tendered performance, but that the defendant prevented performance. The contract annexed to the complaint purports to be an agreement between the defendant and the plaintiff for the services and for the period as alleged. It recites that the defendant thereby agreed that it would pay the sum of $55,000 annually during the term of the agreement for the employment of solicitors to promote its advertising in the New York *Herald,* and $25,000 annually for hiring solicitors for the promotion of its advertising in the *Evening Telegram*, and that said sums were deemed sufficient for the purposes named and would be paid by the defendant " to the staff of each paper on the recommendation " of the plaintiff to the general manager of the defendant, but that if in the judgment of the plaintiff it should be unwise to expend the full amount named, " then the unexpended

funds shall remain in the treasury" of the defendant. It further provides that the plaintiff should have the absolute authority and discretion to hire and discharge any and all solicitors and at such salaries as he may deem advisable, provided that the aggregate amount of their salaries should not exceed said specified amounts; and that the defendant would furnish offices, stenographic help, stationery, postage, telephones and the usual equipment for the advertising staff of the *Herald* and *Evening Telegram* as theretofore in addition to said amounts. The defendant also agreed to engage, on the recommendation of the plaintiff, a western representative, as had been its custom, to promote the advertising interests of the two newspapers; and agreed to pay the plaintiff for his services one-half of one per cent " on all advertising net moneys received from all sources," by the *Herald* and *Evening Telegram* during the term of the agreement, and in addition thereto seven and one-half per cent " on all advertising net moneys received by [the defendant] each month from any and all sources " over and above specified sums received by the *Herald* and *Evening Telegram* monthly during the preceding twelve months. The plaintiff was to have a drawing account of $200 per week and to be paid in full on the 1st day of February, 1919, for the business ending December 31, 1918, and quarterly thereafter. The witness clause of the agreement recites that the defendant caused it to be signed by its general manager. The signature for the defendant is as follows:

" New York Herald Company,
          " by Frank B. Flaherty
                    " *General Manager,*
               " *New York Herald Company.*"

This is followed by the signature of the plaintiff and a witness thereto and then comes the following:

" Approved October 3, 1918.
               " J. K. Ohl,
               " J. D. J. Kelley."

For the third separate defense to each of the causes of action and by way of counterclaim, defendant repeated and realleged, by reference, each and every *allegation* and *admission* contained in paragraphs 1 and 2 of the answer; and further

alleged that the alleged agreement " provided  *  *  *  that the defendant would pay a sum not to exceed $80,000 annually, or ratably for the period commencing on or about October 22, 1918, and continuing to and including January 17, 1920, the sum of $103,333.33 for the employ-ment of solicitors to promote its advertising in said news-papers, said sums to be paid on the recommendation of the plaintiff;" that the plaintiff in violation of said provisions " recommended, incurred liabilities for and paid out from the funds of the defendant for the employment of such adver-tising solicitors a sum in excess of $184,106.94 during the said period;" that the plaintiff, in violation of the provisions of the alleged agreement and for the purpose of increasing the amount of his alleged commissions, "wilfully increased the expenses and costs of obtaining advertising by employing solicitors upon commissions and granting to them commissions greatly in excess of the fair and reasonable amount which should have been expended therefor and greatly in excess of the amount provided for in the said alleged agreement;" that " the amount of such unreasonable and excess payments exceeded the sum of $80,775.61;" that " by reason of the foregoing, defendant has been damaged in the sum of $80,775.61, no part of which has been paid although payment thereof has been duly demanded;" and it demands judgment for the dismissal of the complaint and for $80,775.61, with interest and costs.

In paragraph 1 of the answer, the allegations and admissions of which were realleged by reference in the third separate defense and counterclaim, defendant *denies* the allegations of the 4th paragraph of the complaint with respect to the making of the contract, " except that it admits that on or about October 3, 1918, a paper writing described as an agreement in said complaint, and a copy of which is annexed and made part of said complaint, was signed by the plaintiff and by one Frank B. Flaherty, who at that time was employed by the defendant and was known as the General Manager of the defendant, and was approved by J. K. Ohl and J. D. J. Kelley who at that time were employees of the defendant." In the 2d paragraph of the answer, likewise realleged in the defense and counterclaim, defendant *denies* the allegations of the 5th paragraph of the complaint with respect to the plaintiff's

having entered upon the performance of the contract and having duly performed and having been wrongfully discharged, " except that it admits that from and after the 22nd day of October, 1918, or thereabouts, plaintiff performed services for the defendant as advertising director of the *Evening Telegram* and the New York *Herald*, and that said services continued down to on or about the 17th day of January, 1920, when the defendant discharged the plaintiff from its employment and refused all tenders of future services by the plaintiff." The demurrer relates only to this defense and counterclaim; and the demurrer to the defense is that it is insufficient in law, and to the counterclaim that it fails to state facts sufficient to constitute a cause of action. The reason for the defendant's denial of the execution of the contract as alleged appears in the first and second separate defenses, wherein it takes the positions respectively that the contract was *ultra vires* the corporation, and that its officer and employees who assumed to make it were without authority so to do. The third separate defense and the counterclaim, however, are plainly predicated on breaches by the plaintiff of the agreement as alleged by him.

It is somewhat difficult to understand the theory on which a corporation authorized to publish advertisements contends that a contract for soliciting advertisements is *ultra vires*, or how, after it has recognized the contract and accepted plaintiff's services thereunder for this long period, it expects to avoid the contract on the ground that its execution was unauthorized; but those points are not presented for decision and we do not wish to be understood as assuming to decide them. Of course, the defendant has a right to plead as many defenses as it claims to have and it is not necessary that they shall be consistent. It could stand on its defenses of *ultra vires* and invalidity of the contract on the ground that it was not authorized; and, for its protection in the event that those defenses are not sustained, it could also, as it has done, plead a further defense predicated on breaches of any contract he may establish by which it claims that he has forfeited his right to recover commissions unpaid thereunder and which warranted it in discharging him. For the purpose of the defense predicated on plaintiff's breaches of the contract,

defendant could stand on the contract as pleaded by failing to deny it in the separate defense and without realleging it therein; but where, as here, due performance is alleged by the plaintiff and the defendant thus accepts the contract as alleged, there can be no defense predicated on a breach of the contract by the defendant without a denial in the defense of the allegations of due performance, for manifestly if plaintiff duly performed, as he alleges, he could not have breached the contract. There is, however, in the third defense no express denial of the allegations of due performance by the plaintiff; such allegations are not denied by realleging therein, by reference, the allegations and admissions contained in paragraphs 1 and 2. I am of opinion that for the purpose of the third defense, the allegations of the complaint stand admitted, for in pleading there is a well-recognized distinction between denials, allegations and admissions; and only allegations and admissions, which do not include denials (*Pullen* v. *Seaboard Trading Co.,* 165 App. Div. 117), are attempted to be carried into the third defense by the reference therein to paragraphs 1 and 2 of the answer. It is well settled that unless a contract as alleged is denied, allegations in a defense inconsistent therewith are of no avail, for that is not a form of denial authorized by the provisions of the Code of Civil Procedure. (*Fleischmann* v. *Stern,* 90 N. Y. 110; *Mendelson* v. *Margulies,* 157 App. Div. 666; *American Aniline Products, Inc.,* v. *Mitsui & Co., Ltd.,* 190 id. 485; *Smith* v. *Coe,* 170 N. Y. 162; *Douglass* v. *Phenix Ins. Co.,* 138 id. 209; *Empire Trust Co.* v. *Magee,* 117 App. Div. 34; *Pullen* v. *Seaboard Trading Co., supra.*) The third defense, therefore, is insufficient in law for by it due performance by the plaintiff stands admitted and the demurrer thereto was properly sustained.

There appears to be no objection to combining a defense and a counterclaim where it is claimed that the same facts constitute both. (*Botts* v. *Mercantile Bank,* 180 App. Div. 546.) But a counterclaim must be a cause of action in favor of the defendant and the facts showing the cause of action must be stated therein (Code Civ. Proc. §§ 500, 501) and if the facts so stated are insufficient to constitute a cause of action, a demurrer thereto must be sustained. (Code Civ. Proc. § 495, subd. 5.) For the purposes of the counterclaim,

allegations of the complaint with respect to the making of the contract and performance thereof by the defendant are deemed put in issue by the denials contained in paragraphs 1 and 2 of the answer and they are not required to be repeated in the counterclaim. Here, however, the facts constituting the counterclaim are not alleged. The action is on an express contract set forth in full by annexing a copy to the complaint and making it a part thereof. The counterclaim evidently is intended to be based on the same or a somewhat similar contract but no contract is alleged in the counterclaim. The making and validity of whatever contract the counterclaim is based on are necessarily admitted for otherwise there would be no cause of action stated in the counterclaim. If the only contract claimed by the defendant is that alleged in the complaint, for brevity, it could have realleged, by reference thereto, the making of it or should have pleaded the contract without such reference, and if the counterclaim is predicated on a different contract, it should have alleged the contract as claimed by it and then in either event it should have alleged the breach or breaches for which it claims damages. This, however, defendant did not do. It merely alleged breaches of the *alleged* contract. Defendant finds itself in a predicament, and while denying the making and validity of the contract on which plaintiff relies and for the purposes of a defense alleging, as it was authorized to do, on denying due performance by the plaintiff, breaches thereof by him warranting it in discharging him, it attempts further to protect itself by a counterclaim evidently intended to be based on the contract as alleged and desires to avail itself of the counterclaim in the event that it fails in its defenses with respect to the making and validity of the contract. I know of no theory on which this can be done; and it is not apparent that there is any necessity therefor. Defendant can only have a counterclaim for breaches of the contract in the event that it establishes such breaches, and if it does, unless they are other than those on which it attempts to justify the retention of his commissions and his discharge, it will defeat plaintiff's action, and then it will be at liberty to maintain an action for the damages it has sustained by reason of the plaintiff's failure to perform his contract. If it fails to sustain its plea that

the plaintiff violated the contract, then in so far as its counterclaim is predicated on the same claim with respect to violations, that will be an adjudication that it has no cause of action against him. In other words, if he recovers in the action, the recovery will show that he was not guilty of a substantial breach warranting the retention of his commissions and his discharge and that the defendant has no claim for damages against him with respect to such breaches. It is possible, of course, that the defendant may have a counterclaim against plaintiff predicated on breaches of his duty not warranting the retention of the commissions or his discharge or which it has waived. But however that may be, defendant is under no obligation to interpose in this action as a counterclaim any cause of action it may have against him, and by not so pleading it the cause of action is not lost to it; and it cannot interpose a good counterclaim predicated on a contract without admitting the contract and setting it forth in one of the methods already indicated. The counterclaim is, therefore, insufficient.

It follows that the interlocutory judgment in so far as it sustains the demurrer to the defense should be affirmed, and in so far as it overrules the demurrer to the counterclaim it should be reversed, with costs, and the demurrer sustained, with costs, but with leave to the defendant to amend on payment of the costs of the appeal and of the demurrer.

Clarke, P. J., Dowling, Smith and Page, JJ., concur.

Interlocutory judgment so far as it sustains demurrer to third defense affirmed, so far as it overrules demurrer to counterclaim reversed, with costs, and demurrer sustained, with costs, with leave to defendant to answer on payment of said costs.